IN THE COURT OF CRIMINAL APPEALS
OF TEXAS



NO. PD-0876-13




 DANA HANNA, Appellant

v.

THE STATE OF TEXAS




ON STATE’S PETITION FOR DISCRETIONARY REVIEW
FROM THE SEVENTH COURT OF APPEALS
LUBBOCK COUNTY


 
           Cochran, J., delivered the opinion of the Court in which Meyers, Price,
Johnson, Hervey and Alcala, JJ., joined. Keller, P.J., filed a dissenting opinion
in which Keasler, J., joined. Womack, J., concurred.
 
O P I N I O N 
            Appellant pled guilty to driving while intoxicated. The trial judge accepted his plea
and ordered him to pay $7,767.88 in restitution to Lubbock Power and Light (LP&L) for
repairing a utility pole that appellant’s car had struck. Appellant appealed, arguing that
Article 42.037


 of the Code of Criminal Procedure does not authorize restitution because
LP&L was not a “victim” of the offense for which he was convicted. The court of appeals
agreed, holding that the restitution order was improper because (1) driving while intoxicated
is a victimless crime because it “does not encompass per se a particular category of
complainant,” and (2) there was no victim alleged in the charging instrument.


 We granted
review


 and conclude that restitution (1) may be ordered in a DWI case, and (2) may be
ordered for someone whose name did not appear in the charging instrument. However, the
State must prove that the defendant’s commission of the offense was the direct cause of the
harm. Because the State failed to prove that appellant’s intoxicated driving caused the
damage to the utility pole, we affirm the judgment of the court of appeals, which had deleted
the restitution order.I.
           Appellant was charged with the offense of driving while intoxicated. Before appellant
entered his guilty plea, the trial judge held a restitution hearing, during which the prosecutor
introduced a “damage repair invoice” that gave the total cost of repairing LP&L’s pole. That
was the only evidence the State introduced during this hearing, and appellant objected–during
the prosecutor’s closing arguments–that the State had failed to prove causation. 
           The trial judge then recessed the hearing to allow the prosecutor to introduce
additional evidence. The evidence at the second hearing showed that, on January 17, 2012,
Officer Joshua Franco was dispatched to a car crash. Officer Franco testified that, when he
arrived at the scene, he noticed “power electricity lines all over the road” and “a vehicle that
was crashed into a broken telephone pole.” The officer testified that the driver–appellant–told
him that he had gone to Sonic to get a hamburger, and, while driving home, “he must have
hit a water puddle which caused him to lose control crashing into the pole.” When asked
whether he made any determination of what caused the accident, Officer Franco responded,
“[Appellant] driving that vehicle.” 
           During her closing argument, the prosecutor argued that she “proved the causation to
the damage of the pole with Mr. Dana Hannah . . . in this case driving his vehicle.”


 
Appellant said that Article 42.037 of the Code of Criminal Procedure limits payments of
restitution to victims of the offense, and, because there was no victim in this case, the trial
judge could not order restitution. Unpersuaded, the trial judge ordered appellant to pay full
restitution for the pole.
           On appeal, appellant argued that LP&L was not a victim of the offense for which he
was convicted. The court of appeals agreed for two interrelated reasons. First, the court
noted that the DWI statute “required neither injury to anyone nor the destruction or loss of
anyone’s property.”


 Therefore “LP&L was not a victim ‘of the offense [DWI] for which
[appellant] was convicted,’ and the trial court erred in holding otherwise.”


 Second, although
the court recognized that our decision in Martin v. State


 left open the possibility of
restitution to victims not named in the charging instrument, it held that such a possibility was
very limited and allowed only in rare situations–such as when a defendant steals property
from a husband and wife but the indictment lists only one of them as the complainant.


 The
court concluded:
Again, the nature of the offense here does not encompass per se a particular
category of complainant. No one need be injured or suffer loss for a D.W.I. to
occur. Nor was the incident with the electrical pole or the identity of the pole’s
owner mentioned anywhere in the charging instrument or somehow alleged to
be part of the offense charged. So, it cannot be said that LP&L was somehow
a victim of the crime for which appellant was convicted.




           Because many DWI cases involve accidents with property damage and because the
court of appeals adopted broad and seemingly per se rules, we granted review.
II.
           Restitution is not only a form of punishment, it is also a crime victim’s statutory 
right.


 Restitution serves multiple purposes, including restoring the victim to the status quo
and forcing an offender to address and remedy the specific harm that he has caused.


 “A
broad interpretation of the restitution statutes provides judges with ‘greater discretion in
effectuating opportunities for rehabilitating criminals, deterring future harms, and efficiently
compensating victims.’”


 However, the legislature has also recognized limits on the right
to restitution: the amount of restitution must be just; it must have a factual basis in the record;
and it may be ordered only to a victim of an offense for which the defendant is charged.



           This case poses the question of who is a “victim” for purposes of the Texas restitution
statute. As in all cases involving statutory interpretation, we look first to the plain language
of the statute. We do so in an effort to “effectuate the ‘collective’ intent or purpose of the
legislators who enacted the legislation.”


 
           The Code of Criminal Procedure specifically states that it should be “liberally 
construed” to achieve the legislature’s purpose–“[t]he prevention, suppression and
punishment of crime.”


 The legislature intended restitution to “‘adequately compensate the
victim of the offense’ in the course of punishing the criminal offender.”


 “Society is
benefitted by punishment, including restitution, that is directly related to the offenses for
which a defendant has been charged and convicted.”


 With these goals in mind, we turn to
the restitution statute.
           Article 42.037(a) states that a trial judge has discretion to order a defendant to make
restitution “to any victim of the offense[.]”


 Section (b)(1) covers “damage to or loss or
destruction of property of a victim of the offense[.]”


 Section (b)(2) applies when the
offense “results in personal injury to a victim[.]”


 Section (k) provides, “The court shall
resolve any dispute relating to the proper amount or type of restitution[,]” and that “[t]he
standard of proof is a preponderance of the evidence.”


 Section (k) also puts the burden to
demonstrate “the amount of the loss sustained by a victim as a result of the offense” on the
State, while defendant bears the burden to prove his financial resources and his needs, as well
as the needs of any dependants.


 Section (m) states that a restitution order may be enforced
like the judgment in a civil action.


 
           While Article 42.037 sets out a comprehensive restitution scheme, it leaves one
important aspect vague: the statute does not define the term “victim.”


 When interpreting
a statute, an undefined word or phrase should be construed and understood according to its
common, every day usage.


 According to Black’s Law Dictionary, a “victim” is a “person
who is the object of a crime . . . .”


 But can there be a victim, for purposes of restitution,
when the defendant is charged with a “victimless crime”? And must a victim be named in
the charging instrument? Texas law is unclear on both points.
A.       “Victimless crimes” are not victimless if the offense caused someone harm.

           We have never held that restitution is allowed only for penal offenses with statutorily-recognized victims. But this Court has consistently held that there must be a causal
connection between the criminal offense and the recipient of restitution. For example, in
Gordon v. State,


 we deleted a restitution order for funeral expenses because the jury
acquitted the defendant of murder, and therefore the defendant was not criminally responsible
for the victim’s death and the resulting funeral expenses.


 In Martin,


 this Court again
recognized that “restitution may not be ordered as a condition of probation for losses caused
by an offense for which the defendant is not criminally responsible.”


 And, in Cabla v.
State,


 we stated, in dicta, that “the focus of restitution orders [is] limited to the individuals
alleged and proven to be victims of the charged offense”


 and that “the amount of a
restitution order is limited to only the losses or expenses that the victim or victims suffered
as a result of the offense for which the defendant was convicted.”


 This particular language
in Cabla could be interpreted as meaning either individuals “alleged in the indictment” or,
more generally, individuals “alleged and proven to be victims of the criminal offense” at the
restitution hearing. We believe that the latter interpretation is the correct one because later
in Cabla we stated that “if a trial court . . . awards restitution to an individual either not
named as a victim in the indictment or not shown to be a victim at trial, . . . [t]hen the
restitution order may be attacked on those grounds.”


 
           In support of its conclusion that restitution is not permissible when a criminal offense
contains no statutory requirement of a complainant (i.e., a victim), the court of appeals relied
on two lower court opinions: Bruni v. State


 and Lemos v. State.


 In Bruni, a defendant was
ordered to pay restitution to a theft victim’s wife even though he, not his wife, was the named
complainant. The court held that, although the victim’s wife was not a named complainant,
the record showed that the stolen money was jointly owned by the victim and his wife as
community property, so the victim’s wife was herself a victim.


 
           The court of appeals in this case read Bruni as permitting restitution because the wife,
like the victim, “fell within the statutorily contemplated category of victims of theft.”


 But
nothing in Bruni indicated that its holding hinged on “statutorily contemplated” victims.
Rather, the Bruni court held that the victim’s wife was also a victim because “[t]he record
show[ed] that the $40,000 appropriated by Bruni was jointly owned by John and Betty Ross
as husband and wife. . . . Perforce, both were victims.”


 The result depended entirely on the
evidence that the named victim’s wife was also a victim and that the defendant’s criminal
conduct caused her loss, not that she was a “statutorily contemplated” victim.
           In Lemos, the defendant was acquitted of murder, but convicted of aggravated
robbery. On appeal, he challenged a restitution order that required him to pay for therapy for
the murder victim’s family.


 The court held that the victim’s family did not qualify for
restitution because “‘restitution is limited to the results of the offense or offenses charged,
and that restitution must be made only to the victim[.]’”


 Thus, “restitution exists only for
those direct victims of the offense for which the defendant was charged and convicted.”


 
However, the Lemos court equated that correct statement with an incorrect one: the victim’s
family could not recover because they were not “statutorily-recognized victim[s].”


 
           It was this language on which the court of appeals in the present case relied.



However, as we have already noted, the restitution statute does not define “victim” nor does
it require that restitution may be ordered only for those criminal offenses that foresee harm
to a specific victim or complainant. Therefore, while we agree that restitution is limited to
victims who have suffered harm to their person or property as a result of the offense, this
does not mean that such restitution is limited to a “statutorily-recognized” victim.
           Instead, we hold that, for purposes of the restitution statute, a “victim” is any person
who suffered loss as a direct result of the criminal offense. As stated in Section 42.037(k),
“[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the
offense is on the prosecuting attorney.”


 The phrase “as a result of the offense” includes the
notion of both actual and proximate causation.


 As the State acknowledges, the damage
must be a “direct” result of the defendant’s criminal offense–that is, the State must prove, by
a preponderance of the evidence, that the loss was a “but for” result of the criminal offense
and resulted “proximately,” or foreseeably, from the criminal offense.


 
           This standard is similar to that used in many other jurisdictions.


 In addition, public
policy supports allowing restitution to victims of purportedly “victimless” crimes. Allowing
restitution in such cases provides victims with a single forum in which they may recover
actual damages, albeit only those caused as a direct result of the offense. Prohibiting
restitution in such cases would severely limit a victim’s ability to be made whole if that
person did not have the financial resources to hire an attorney and pursue a civil lawsuit. 
This is not to say that a restitution proceeding could, or should, replace civil actions.


 But
when the legislature specifically provides a procedural mechanism for compensating the
victims of crime, that mechanism should not be unnecessarily or artificially limited.
           Furthermore, allowing restitution in DWI cases is consistent with public policy
concerns specific to DWI laws. Although the court of appeals correctly noted that the
offense of DWI does not require a victim, the whole purpose of criminalizing driving while
intoxicated is to prevent “[t]he carnage caused by drunk drivers”


–fatalities, serious injuries
and property damage.


 Furthermore, judicially enacting a flat prohibition against restitution
in DWI cases could have deleterious effects, such as giving prosecutors an incentive to
charge DWI defendants with additional counts of intoxication assault or criminal mischief
solely to preserve the right to request restitution for an accident victim. Therefore, we
conclude that restitution may be ordered, when appropriate, in DWI cases.



B.       A victim need not be named in the charging instrument.
           There is nothing in the Code of Criminal Procedure requiring, as a prerequisite for a
restitution order, that a victim be alleged in the charging instrument. Indeed, the restitution
statute explicitly states that a defendant may be ordered to make restitution to “any victim
of the offense.”


 If the legislature intended that restitution could be ordered only for “the
named victim of the offense” or “the complainant of the offense” it surely would have said
so. Even the phrases “the victim” or “a victim” are more restrictive than the expansive
phrase “any victim.” When the legislature uses the word “any,” it usually means “any and
all.” Furthermore, we have never held that, to be entitled to restitution, a victim must be
named in the charging instrument. In fact, we indicated quite the opposite in Martin v.
State,


 when we noted that
[n]amed complainants will generally be the only victims of the crime
adjudicated because in the majority of cases the offense is alleged in terms of
an identified victim or complainant. However, we make this distinction
because we recognize that the named complainant may not always be the only
victim of the crime adjudicated.




There is no requirement that a restitution victim be alleged in the indictment. Holding
otherwise would allow for bizarre circumstances that could not have been the intent of the
legislature. Imagine that Dangerous Dan breaks into Suzie Q’s house and steals Suzie’s
computer and her houseguest’s Rolex watch. Is the trial judge forbidden from ordering
restitution for the houseguest simply because she is not the complainant named in the
burglary indictment? This cannot be the case. It is more logical and just to conclude that the
houseguest is entitled to restitution if the State proves, by a preponderance of the evidence,
that she is also a victim–that the burglary was the “but for” and proximate cause of the loss
of her Rolex.
           In sum, we conclude that a person who suffers property damage or personal injuries
as the direct result of a defendant’s DWI crime may be entitled to restitution even though that
victim is not named in the DWI charging instrument. III.
           Although we reject some of the reasoning of the court of appeals, we nonetheless
affirm its holding that the $7,767.88 restitution order was improper. The State offered
evidence that appellant caused the damage to the utility pole, but there is no evidence–and
certainly not proof that satisfies the preponderance of the evidence standard–to show that the
offense (appellant’s intoxicated driving) caused the damage to the utility pole. The only
evidence as to what caused the accident (and the resulting damage) was appellant’s statement
that “he must have hit a water puddle which caused him to lose control crashing into the
pole.” The trial judge did not have to believe appellant’s testimony concerning the cause of
the accident, but there is no other affirmative evidence that would support a finding that
appellant’s intoxicated driving caused the accident.



           In this case, appellant pled guilty, so there was no trial testimony concerning his
driving, the accident, or his intoxication. At the end of the first restitution hearing in which
the State proved only the amount of the damage to the utility pole, appellant objected because
“[t]here’s been no evidence of causation.” When the trial judge asked if the State needed a
recess, appellant again objected, saying, “The State has had plenty of time to prepare this. 
This is the third time we’ve been here. They didn’t present evidence as to causation.” 
Nonetheless, the trial judge recessed the restitution hearing for several days to allow the State
an opportunity to prove causation.
           At that second hearing, Officer Franco testified that he responded to a dispatch call
for “a car crash with injuries.” When he arrived, he saw a car “that was crashed into a
broken telephone pole” and “power electricity lines all over the road.” The pole was broken
in half. Appellant, the driver of that car, told Officer Franco that he hit a water puddle and
lost control of his car. Officer Franco never mentioned anything about appellant being
intoxicated, smelling of alcohol, or exhibiting any other indicia of drunkenness. He never
mentioned the word alcohol or drink or drunk. He did not describe appellant’s condition or
demeanor. When the prosecutor asked if Officer Franco had made a determination as to what
caused that accident, Officer Franco said, “Mr. Hanna[] driving that vehicle.” Period. We
cannot simply assume, without any evidence, that Officer Franco thought appellant was
intoxicated or that this assumed intoxication caused the accident.
           People frequently have car accidents regardless of whether they are intoxicated. To
obtain restitution, the State must prove that appellant’s intoxicated driving was the “but for”
and proximate cause of the damage. Although the State was given ample opportunity to offer
evidence that it was appellant’s intoxicated driving that caused the accident, there was no
such proof in this case.


 
           Therefore, we affirm the judgment of the court of appeals.
Delivered: April 9, 2014
Publish